**MOUNTAIN PRIDE FARMS,
INC., Plaintiff,**

v.

**The DOW CHEMICAL COMPANY,
Defendant.**

**No. 80 Civ. 3247(MEL).**

United States District Court,
S. D. New York.

Sept. 16, 1982.

Cozen, Begier & O'Connor, Philadelphia, Pa., Healy & Baillie, New York City, Maslon, Edelman, Borman, Brand & McNulty, Minneapolis, Minn., for plaintiff; Patrick J. O'Connor, Philadelphia, Pa., William F. Losquadro, New York City, of counsel.

Frumkin & Manta, Philadelphia, Pa., Meiselman, Farber, Stella & Moran, P.C., Poughkeepsie, N.Y., for defendant; Joseph G. Manta, Philadelphia, Pa., Robert S. Franklin, Poughkeepsie, N.Y., of counsel.

LASKER, District Judge.

This action arises from a fire which caused serious damage to the premises of Mountain Pride Farms, Inc. ("Mountain Pride") on June 16, 1977. One of the materials used to insulate the Mountain Pride facility was Styrofoam, made by Dow Chemical Co. ("Dow"). Mountain Pride sues Dow alleging that Dow was negligent in failing to give Mountain Pride adequate information about the flammability and burning characteristics of Styrofoam.

Dow moves to file a third party complaint against Millers Mutual Insurance Company ("Millers") pursuant to Fed. R. Civ. Pr. 14. Dow alleges that Millers, Mountain Pride's insurance carrier "agreed to and undertook to render loss control and fire prevention services to [Mountain Pride]" (Dow's proposed Third Party Complaint, ¶ 8, Exhibit E to Affidavit of Dow's counsel), and that Millers was consequently under a duty, but failed to inform Mountain Pride as to the flammability of the materials used in the construction of the facility. It follows, Dow contends, that if, as Mountain Pride alleges, the fire was proximately caused by Mountain Pride's ignorance as to the flammability characteristics of Styrofoam, then Millers was a joint tortfeasor with Dow. In such a case, Dow argues if it is found liable to Mountain Pride, it may be entitled to contribution or indemnity from Millers, and it is therefore entitled to implead Millers in this action.

Mountain Pride answers that Millers cannot be found to have been at fault for the fire, because Millers, as an insurer, had no duty to inform Mountain Pride as to the flammability of its structure. Moreover, Mountain Pride contends that the motion is untimely under Local Rule 3(k), which provides that motions pursuant to Fed. R. Civ. Pr. 14 be made within six months of the moving party's answer to the complaint. Mountain Pride also asserts that it will be prejudiced by the addition of Millers as a party, which it says will cause delays in the trial of the main action and complicate the trial by the addition of collateral issues such as the relationship between Mountain Pride and Millers.

Dow replies that it is not alleging that Millers assumed any loss control duties to Mountain Pride simply because it was Mountain Pride's insurance carrier. Rather, its claim is that Millers' duty to Mountain Pride arose from a contract that Millers entered into with Mountain Pride to render loss control and fire prevention services. Dow alleges that Millers undertook loss control services for Mountain Pride, that Mountain Pride justifiably relied on its belief that Millers would exercise due care in performing the services, and that Millers performed the services negligently.

Rule 14(a) provides that:

"a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him."

■ Assuming arguendo that Millers originally had no duty to inform, nevertheless, under New York law, which controls in this diversity action, one who undertakes action, as it is alleged that Millers did, may be held liable in certain circumstances if he fails to act with due care. *Nallan v. Helmsley-Spear, Inc.,* 50 N.Y.2d 507, 429 N.Y.S.2d 606, 407 N.E.2d 451 (1980). In *Nallan,* the Court of Appeals of New York held that the plaintiff, who had been shot while entering a building owned by the defendant, Helmsley-Spear, had stated a good cause of action in alleging that Helmsley-Spear, which ordinarily provided an attendant to watch the lobby, had assumed a duty to do so, "the

negligent performance of which could lead to liability, even if there was no legal duty in the first instance to provide a lobby attendant." 50 N.Y.2d at 523, 429 N.Y.S.2d at 615, 407 N.E.2d at 459. The *Nallan* court specified the requirements for stating a cause of action for negligent performance of an assumed duty:

> "The formula for determining when 'one who assumes a duty to act, even though gratuitously, may thereby become subject to the duty of acting carefully' has been articulated by Chief Judge Cardozo as follows: 'If conduct has gone forward to such a state that inaction would commonly result, not negatively merely in withholding a benefit, but positively or actively in working an injury, there exists a relation out of which arises a duty to go forward.'"

*Id.*

■ Dow has set forth allegations which satisfy the "formula" explicated in *Nallan.* Dow has alleged that Millers agreed to provide Mountain Pride with fire prevention services, one aspect of which was to inform Mountain Pride as to the flammability characteristics of the materials used in the construction of its facility.[1] Furthermore, Dow has alleged that Mountain Pride "acted in response to and relied upon Millers Mutual's loss control and fire prevention services to reduce the risk of fire and to reduce the extent of loss in the event of fire," (Proposed Third Party Complaint, ¶ 11), and that Millers failed to exercise due care in carrying out the duty that it had assumed.

All of the elements required in *Nallan* are alleged: an undertaking by the defendant, foreseeable reliance by the plaintiff on the continuation of the actions undertaken, and failure of the defendant to exercise due care with a result that the plaintiff, due to

his reliance on the undertaking, was placed "in a more vulnerable position than he would have been in had [the defendant] never taken any action at all." 50 N.Y.2d at 523, 429 N.Y.S.2d at 615, 407 N.E.2d at 459.

Mountain Pride seeks to distinguish the case at bar from *Nallan* and the numerous similar New York cases by reference to *Home Mutual Insurance Co. v. Broadway Bank and Trust Co.,* 53 N.Y.2d 568, 444 N.Y.S.2d 436, 438 N.E.2d 842 (1981), in which the Court of Appeals limited liability under the "assumed duty" theory to situations in which the defendant undertook his actions "for the purpose of aiding or serving another" as opposed to "in his own behalf and in furtherance of his own interests." 444 N.Y.S.2d at 439, 428 N.E.2d at 845. For example, the *Home Mutual* court analogized the case before it to a case in which an insurance company was held not liable for its failure to use reasonable care in making inspections of the insured's premises because the company was making inspections "for its own protection in order to reduce risks that might give rise to liability on the policy," not to benefit the insured. *Id., citing Gerace v. Liberty Mutual Insurance Co.,* 264 F.Supp. 95, 97 (D.D.C. 1966).

*Home Mutual* does not support Mountain Pride's position. Millers is not alleged to have undertaken loss control and fire prevention services solely for its own protection "in order to reduce risks that might give rise to liability on the policy." Rather, Dow alleges that Millers was providing loss control to Mountain Pride *as a service to Mountain Pride.*

Accordingly, Dow has adequately alleged that if a tort occurred, Millers may be a joint tortfeasor,[2] which, under New York

---

1. Dow has presented documents which set forth a threshold showing of fact that Millers actually provided loss control services. For example, the "Millers Mutual Bulletin," (Exhibit B to Dow's Motion) states: "Millers Mutual risk counsellors are trained to look for practical means of early detection before the fire can get out of hand, and in many cases are helping our clients consider new construction and the ef-

fect design and materials may have on the cost of protection."

2. In order to prevail on a motion pursuant to Rule 14(a), the movant need not demonstrate that it is certain to prevail on the merits of its third-party complaint. The question presented is the adequacy of the pleadings:

> "There must, of course, be some showing that under the applicable law the third party

law, would entitle Dow to contribution from Millers for Millers' share of the damages. 10 N.Y. Juris., Contribution, ¶ 18.

■ With respect to Dow's failure to move within six months of its answer, as required by Local Rule 3(k), Dow argues that it was Mountain Pride's obstruction of the discovery process that caused the delay. Immediately after it filed its answer, Dow served interrogatories directed toward discovering Millers' fire protection duties vis-a-vis Mountain Pride. Dow contends that Mountain Pride failed to make responsive answers to the interrogatories at issue, and that it then filed requests for document production, directed at discovering the same information. Again, Dow contends, its requests were ignored. Dow explains that it was unable to obtain the information necessary to support the instant motion until a deposition which took place on December 8, 1981, after having been postponed by Mountain Pride for over eight months. The instant motion was filed on March 23, 1982.

Mountain Pride does not contest Dow's description of the course of discovery in this matter, nor does it suggest that there were other means available to Dow for obtaining the facts necessary for the motion. Rather, Mountain Pride relies on its contention that it will be delayed in proceeding to trial by the impleader of Millers, in that discovery by and against Millers will consume a great deal of time. Mountain Pride also contends that the addition of Millers will unduly complicate the trial by adding numerous additional issues.

Rule 3(k) provides that the court may allow Rule 14 motions to be made after the six month period if there is a "showing of special circumstances and of the necessity for such relief in the interest of justice and upon such terms and conditions as the court deems fair and appropriate."

> *may* be liable to the defendant. However, the allegations of the third-party complaint need not show that recovery is a certainty; the complaint should be allowed to stand if, under some construction of the facts which might be adduced at trial, recovery would be possible."

Where a delay in filing a motion is caused by the opponent's failure to cooperate with discovery, it is not in the interests of justice to allow the opponent to rely on the delay in opposing the motion.

Moreover, the subrogation agreement between Mountain Pride and Millers (Exhibit A to Affidavit of Dow's counsel), reveals that if Mountain Pride recovers up to $538,000, that money will be owed by Mountain Pride to Millers. If indeed Millers' actions were a cause of the fire, as is alleged, it would hardly be equitable to allow Millers to reap the rewards of Mountain Pride's action against Dow, and require Dow to bring a separate action against Millers to divest it of an amount by which it would have been unjustly enriched.

Accordingly, Dow's motion to file a third party complaint against Millers is granted.[3]

It is so ordered.

---

3 Moore's Federal Practice, ¶ 14.10 at 14–60, 14–61 (emphasis in original).

**3.** In view of the granting of the motion pursuant to Rule 14, it is unnecessary to consider whether Millers could be joined as a real party in interest or a person to be joined if feasible, pursuant to Fed. R. Civ. Pr. 17, 19 and 21.